UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| In re: | \* | Bankr. Case No. 17 - 30039 |
| | | Chapter 11 |
| HARDES HOLDING, LLC, | \* | |
| EIN/ITIN:  46-5080137, | | **DISCLOSURE STATEMENT** |
| | \* | **DATED JUNE 4, 2018** |
| Debtor. | \* | |
| | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. CAVEAT

THE ATTACHED PLAN IS COMPLEX IN AS MUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR.  CREDITORS ARE URGED TO CONSULT WITH COUNSEL IN ORDER TO FULLY COMPLY WITH THE PLAN.

NO REPRESENTATIONS OR STATEMENTS CONCERNING THE DEBTOR OR ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY, ASSETS, OR SECURITIES ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT.  THE ACCURACY OF INFORMATION IN THIS DISCLOSURE STATEMENT IS DEPENDENT UPON THE RELIABILITY OF DEBTOR'S RECORDS.  THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS ABSOLUTELY WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE LAW FIRM OF GERRY & KULM ASK, PROF. LLC, COUNSEL FOR THE DEBTOR, HAS NOT VERIFIED THE INFORMATION SET FORTH HEREIN, BUT SUCH FIRM HAS NO ACTUAL KNOWLEDGE OF ANY INACCURACIES.

## II. LEGAL REQUIREMENTS FOR ACCEPTANCE OF THE PLAN

The Bankruptcy Code provides that in order for the United States Bankruptcy Court to confirm a Plan, the Court must count the acceptances or rejections filed by creditors of classes whose rights are impaired.  In order for a Plan to be deemed accepted by a class, of the ballots cast by the creditors in such class, more than one-half in number and at least two-thirds in amount of the allowed claims in such class must vote to accept the Plan.

## III. DEBTOR'S NATURE, HISTORY, AND EVENTS DURING REORGANIZATION

Hardes Holding, LLC is a land holding company formed in January 2014. The LLC was constructed for the purpose of estate planning and restructuring of the members long term assets. The LLC entered into a refinance of its member debts with Sandton Credit Solutions Master Fund III LP on July 23, 2015. The creditor/debtor relationship has been strained, to say the lease, from the beginning of the loan transaction, despite all payments paid on time. The initial loan documents did not provide for liens on the LLC's sister company Hardes Partnership. However, within 90 days of the initiation of the loan, the LLC was in default and the creditor required Hardes Partnership to be added to the loan documents per an amendment. The winter/spring of 2017 Hardes Partnership required an operating loan which was approved by Ag Resource Management and required a subordination from Sandton. Sandton refused to provide a subordination unless the LLC/partnership paid a 2% fee on the outstanding loan balance owed to them. In light of Sandton's predatory actions, it was discovered that the creditor did not have a license to lend money in South Dakota per SD statute 54-4-76 and was only entitled to principal owed. See objection to claim. The LLC stopped making payments to Sandton in May of 2017 after the discovery of the statue violation and the loan matured on July 23, 2018. Despite efforts to negotiate with Sandton, they initiated foreclosure action against the LLC. The LLC had no option but to file for Chapter 11 protection from this predatory lender.

## IV. DESCRIPTION OF PLAN

DEBTOR HAS DEVELOPED A PLAN ON A BASIS SO AS TO PROVIDE REALISTIC AND ACCEPTABLE RECOVERIES TO EACH CLASS OF CREDITORS. THE DEBTOR BELIEVES THAT THE PLAN PERMITS MAXIMUM POSSIBLE RECOVERY FOR ALL CLASSES OF CLAIMS WHILE EXPEDITING THE REORGANIZATION OF THE DEBTOR. THE FOLLOWING DESCRIPTION OF THE PLAN IS QUALIFIED IN ITS ENTIRETY BY THE TERMS OF THE PLAN ITSELF. THE DEFINITIONS IN THE PLAN APPLY TO THIS DISCLOSURE STATEMENT.

A) <u>SUMMARY TABLE:</u> The following quick reference table is provided to summarize, in a very general fashion, the payments offered under Debtor's Plan.

| Class: | Claim: | Impaired / Unimpaired: | Claim amount under Plan: | Treatment: |
|--------|--------|------------------------|--------------------------|------------|
| Priority Class | IRS | Unimpaired | $100.00 | Paid in full upon confirmation of Plan. |
| Class 1 | Sandton Credit Solutions Master Fund III | Impaired | $8,755,376.25 ($10,692,876.25 claim, reduced by discount of $1,937,500.00) | $280,224.41 paid at confirmation of plan $280,224.41 paid on 12/15/18 and then $8,755,376.25 paid over 30 years w/ interest at 4.0% w/ annual payments of $560,448.82 starting 12/15/19, and a balloon due in 15 years. |

| Class 2 | Swenson Partnership | Impaired | $758,518.97 (original POC amt of $769,513.64, reduced by equipment pymnt of $10,994.67) | $24,277.14 paid at confirmation of plan $24,277.14 paid on 12/15/18 and then $758,518.97 paid over 25 years w/ interest at 4% w/ annual payments of $48,554.29 starting 12/15/19, and a balloon due in 15 years. Claim subject to objection and setoff – may be adjusted. |
|---|---|---|---|---|
| Class 3 | Administrative Convenience Unsecured Creditor Class (less than $14,000.00) | Impaired | $11,000.00 | Will be paid w/in one year w/o interest, after confirmation. |
| Class 4 | Unsecured Creditors that Exceed $14,000.00 | Impaired | $53,520.00 | 100% w/ interest at 3.0%, payments of $13,380.00, annually starting 12/15/18 until paid in full. |

B)  UNCLASSIFIED ADMINISTRATIVE EXPENSES, LEASES, AND EXECUTORY CONTRACTS:  Unclassified administrative expenses generally include: (i) all attorneys', accountants' and consultants' fees allowed by the bankruptcy court; (ii) claims allowed by the bankruptcy court for expenses incurred by the debtor during the Chapter 11 proceeding and not paid in the ordinary course of business; (iii) amounts necessary to cure any defaults on any executory contracts and leases assumed by the debtor; and (iv) U.S. Trustee fees payable under 28 U.S.C. §1930.

1. PROFESSIONAL FEES.  Debtor estimates that the fees payable to attorneys, accountants, consultants and other professionals upon confirmation will be approximately $22,000.00.  In addition to amounts paid pre-petition, Debtor estimates fees and expenses to various professionals, payable upon confirmation or upon such other terms as maybe agreed to by the parties, and which are approved by the Court.

2. POST-PETITION ADMINISTRATIVE CLAIMS.  Debtor will pay all operating expenses in the ordinary course of its business.

3. EXECUTORY CONTRACTS.  The Plan includes a list of executory contracts and leases that will be assumed on the confirmation date, if not already assumed by Order of the Court.  All executory contracts and leases previously entered into during the case or assumed by the Debtor by prior Court Order are assumed in this Plan.

## V. CLASSIFICATION OF CLAIMS AND DISTRIBUTIONS TO CLASSES

The Plan divides claims as follows:

A)  LEASES AND EXECUTORY CONTRACTS:  Debtor has 2 written leases with Hardes Partnership on approximately 6,920 acres farm ground.  Debtor is current with said leases and the Plan provides for assumption of said leases.

B)  <u>ADMINISTRATIVE EXPENSES</u>:  Debtor's Plan provides that expenses of administration shall be paid on the effective date of the Plan.  Debtor's counsel fees and expenses in the approximate amount of $12,000.00 will be paid upon approval by the Court, and any Trustee fees or Clerk fees owed upon the effective date of the Plan will be paid at that time. Furthermore, accountants' and other professional's fees and expenses in the approximate total amount of $10,000.00 will be paid upon approval by the Court.

C)  <u>PRIORITY CLAIMS</u>:  The Internal Revenue Service holds a pre-petition priority claim against Debtor in the amount of $100.00, based upon the Proof of Claim on record.  This priority claim will be paid in full upon Plan confirmation.  Any potential unsecured portion owed to the Internal Revenue Service for these taxes will be paid in accordance with the respective unsecured creditor class listed below.

Ziebach County Treasurer holds a priority claim for real estate taxes against Debtor in the amount of $21,441.72, based upon the Proof of Claim on record.  The priority claim with Ziebach County Treasurer will be paid in full over five (5) years w/ interest at the rate of 12.0%. The first annual payment will be before or on December 15, 2018 in the amount of $5,948.23, and will continue annually thereafter.  Any potential unsecured portion owed to Ziebach County Treasurer will be paid in accordance with the respective Unsecured Creditor Class listed below. In addition, taxes owed for 2017 that are due and payable in 2018 will be paid upon plan confirmation, and the real estate taxes will continue to be paid every year thereafter.

Hand County Treasurer holds a priority claim against Debtor in the amount of $24,777.44, based upon the Proof of Claim on record.  The priority claim with Ziebach County Treasurer will be paid in full over five (5) years w/ interest at the rate of 12.0%.  The first annual payment will be before or on December 15, 2018 in the amount of $6,873.39, and will continue annually thereafter.  Any potential unsecured portion owed to Ziebach County Treasurer will be paid in accordance with the respective Unsecured Creditor Class listed below.   In addition, taxes owed for 2017 that are due and payable in 2018 will be paid upon plan confirmation, and the real estate taxes will continue to be paid every year thereafter.

D) <u>DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS</u>:

1.    <u>Class 1 – Sandton Credit Solutions Master Fund III</u>:  Sandton Credit Solutions Master Fund III holds a security interest through a first mortgage position on Debtor's real property located in Ziebach County and Hand County, South Dakota, and an agricultural business blanket lien.  The value of the assets is approximately $21,752,904.21 and the alleged debt owed to this creditor is $11,584,980.18, as detailed on this creditor's Proof of Claim on record.  However, Debtor filed an objection to this creditor's Proof of Claim stating that this creditor should be entitled only to the principal amount as they were not licensed pursuant to South Dakota law.  Therefore, the total debt owed to this creditor is in the approximate amount of $7,010,982.76, but as a concession, Debtor will pay the amount of $8,755,376.25, with Plan rate of interest.  This creditor will be paid interest at a rate of 4% per annum on the principal of this debt only, as amortized over a thirty (30) year term with a 15 year balloon.  The annual payment to this creditor will be in the amount of $560,448.82.  The pre-petition interest and any attorney fees will be paid with the final balloon payment, without compound interest.

Any pre-confirmation adequate protection payments will be applied to the above indebtedness.

Debtor reserves the right to prepay principal at any interval on this debt, without having to pay any penalties.

This creditor shall retain its lien position until paid in accordance with the Plan. Upon final payment this creditor shall release all liens, mortgages, and encumbrances of record. Debtor shall insure, maintain, replace, and repair the assets secured by this creditor, through the course of the Plan, so as to retain the value of the assets, absent ordinary wear and tear.

Once a Plan is confirmed, it becomes the new contract between Debtor and this creditor.

In the event Debtor defaults in any annual payment due this creditor, this creditor shall be required to give Debtor thirty-days' written notice to cure such default. In the event Debtor fails to timely cure a noticed default, then this creditor may accelerate the remaining balance in accordance with this Plan and pursue its state court remedies.

2.    Class 2 – SWENSON PARTNERSHIP:    Swenson Partnership holds a second mortgage position on Debtor's real property located in Hand County and Ziebach County, South Dakota. The value of the asset is approximately $20,126,100.00, and the debt owed to this creditor is approximately $769,513.64, as detailed on this creditor's Proof of Claim on record. This creditor will be paid interest at a rate of 4% per annum as amortized over a twenty-five (25) year term, with a 15 year balloon. The annual payment to this creditor will be in the amount of $48,554.29, with the first annual payment being due on or before December 15, 2018, and continuing annually thereafter. The amount of claim is subject to an objection to this claim, or the right to setoff.

Any pre-confirmation adequate protection payments will be applied to the above indebtedness.

Debtor reserves the right to prepay principal at any interval on this debt, without having to pay any penalties.

This creditor shall retain its lien position until paid in accordance with the Plan. Upon final payment this creditor shall release all liens, mortgages and encumbrances of record. Debtor shall insure, maintain, replace, and repair the assets secured by this creditor, through the course of the Plan, so as to retain the value of the assets, absent ordinary wear and tear.

Once a Plan is confirmed, it becomes the new contract between Debtor and this creditor.

In the event Debtor defaults in any annual payment due this creditor, this creditor shall be required to give Debtor thirty-days' written notice to cure such default. In the event Debtor fails to timely cure a noticed default, then this creditor may accelerate the remaining balance in accordance with this Plan and pursue its state court remedies.

3.   Class 3 –ADMINISTRATIVE CONVENIENCE UNSECURED CREDITOR
CLASS:  This class shall consist of the following claimants:  all unsecured creditors who timely
file a Proof of Claim which is not objected to, or are listed on Debtor's Schedules or
Amendments as disputed, contingent, or unliquidated and have claims of $14,000.00 or less, or
those that elect to reduce their claim to a sum of $14,000.00.

Debtor estimates that this class will consist of approximately 1 creditor, Swenson
Partnership in the amount of $11,000.00, all of which are evidenced by Proofs of Claim on
record.  This class of creditors will be paid 100% of their allowed claims within one (1) year
after confirmation, without interest.  Any creditor in this class may elect to be part of Class 4 to
receive interest on its claim.  If any creditor in this class fails to ballot on this Plan, then that
creditor's claim shall be paid in accordance with Class 3.  Debtor reserves the right to prepay
principal at any interval on this debt, without having to pay any penalties.  This claim may be
subject to an offset, which is reserved.

Once a Plan is confirmed, it becomes the new contract between Debtor and creditors.

In the event Debtor defaults in a Plan payment, a creditor shall give Debtor thirty days'
written notice to cure.  If Debtor fails to timely cure, then a defaulted creditor may sue for
judgment in state court and proceed with state court remedies.

Debtor requests that the Court approve as reasonable and necessary, and for administrative
convenience, this separate class of claims for unsecured creditors.

4.   Class 4 - UNSECURED CREDITORS:  This class shall consist of all unsecured
creditors, (except Class 3 creditors), with claims that exceed $14,000.00, who have timely filed a
Proof of Claim which is not objected to or listed on Debtor's Schedules or Amendments, as
being disputed, contingent or unliquidated, or those creditors who obtained a Court Order
allowing their claim.

Debtor estimates this Class of creditors to consist of approximately 1 creditor and is owed
a total amount of $53,200.00.

This creditor is D&M Ag Services, and will receive interest at the rate of 3% per annum.
The first payment will start December 15, 2018 in the amount of $13,380.00 and will continue
annually until paid as provided herein.

## VI. OTHER PROVISIONS

A) **Potential Tax Consequences.**  In regards to the treatment of the various classes of
claims under the Plan, the Plan does not alter the federal income tax treatment for Debtor with
regard to such payments.  However, such income would be excluded from recognition of taxable
income for federal income tax purposes.  In addition, the Plan does not provide for the sale of
any assets held by Debtor.

No information is set forth in this Disclosure Statement with the respect to the tax impact, if any, of payments or other consideration received by a creditor under this Plan and the possible tax benefits to creditors if the Plan is confirmed. As to any tax implications of accepting or rejecting the Plan, you may want to consult your own attorney or accountant.

B) **Avoidable Transfers**. To the best of Debtor's knowledge, no avoidable transfers exist through the proposed Plan, except as stated herein.

C) **Source of Information.** The sources of information provided in Debtor's Disclosure Statement were derived from Debtor, Debtor's records, and information Debtor was able to obtain from their tax professionals, along with any and all other documents that have been filed by his creditors in this case and of which are all of record.

D) **Potential Claims against the Estate.** To the best of Debtor's knowledge there are no outstanding claims against the estate, except as what may have already been disclosed herein, on the proofs of claims on record, or in its Schedules in relation to Debtor's creditors.

E) Debtor will continue to operate its business until the Plan is completed. Debtor's members have been involved in the farming operation their entire lives and plan to continue that way. Therefore, Debtor has committed to whatever is necessary to make this work so that the secured creditors can receive the payments as proposed under the Plan.

## VII. OBJECTIONS TO CLAIMS AND RESERVATION OF RIGHTS

Debtor has not had the opportunity to determine if credit has been given appropriately for offsets and all payments made to creditors, nor to diligently review Proofs of Claims. This Plan reserves the right for Debtors to object to Proofs of Claims, post-confirmation, for any reason.

## VIII. BASIS FOR THE PLAN

Debtor is of the opinion that confirmation of the Plan will result in not only a full value payment to all secured creditors, but an opportunity for full payment to unsecured creditors who may receive almost nothing if assets were liquidated by foreclosure. Also, Debtor is of the opinion that confirmation of the Plan will result in an opportunity for Debtor to retain an ongoing business, provide employment to employees, and provide an economic stimulus to the farming community and this State.

Debtor believes that the Plan provides creditors with the greatest value that can be realized on their respective claims and interest. The alternative to confirmation of the Plan are the submission of an alternative Plan, of which no other Plans have been filed, or the liquidation of the Debtor. However, in connection with the formulation of the Debtor's Plan, the Debtor has determined the liquidation value of his assets if they were liquidated under Chapter 7 of the Bankruptcy Code. The below Liquidation Analysis provides those numbers. The liquidation of the Debtor's assets through a foreclosure will generate less to the unsecured creditors and potentially less to the secured creditors than they would receive under the Plan as a result of liquidation costs, the holding period, and other expenses to take into consideration.

## IX. LIQUIDATION ANALYSIS

Description
All assets:

Ongoing Concern
Value:

1. Real Property – SW1/4 of Section 3    $700,000.00
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – NE1/4 of Section 10    $800,000.00
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – S1/2 of Section 14; NE1/4 of    $6,400,000.00
      Section 23; Section 33;
      SW1/4 of Section 34
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $523,357.80

Real Property – W1/2 of Section 1 & NE1/4 of    $2,400,000.00
      Section 24
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – W1/2 of Section 18    $1,600,000.00
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – S1/2 & NW1/4 of Section 2    $2,400,000.00
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – W1/2 & S1/2 of SE1/4 of    $3,070,900.00
      Section 20; SW1/4 of
      Section 20; SW1/4 of
      Section 28; W1/2 of NE1/4
      of Section 29; N1/2 & SE1/4
      of Section 32; & W/12 of Section 33
   Sandton Credit Solutions Master Fund III    ($10,692,876.25) (approx.)
   Swenson Partnership    (353,030.81) (approx.)
   Net subtotal for liquidation analysis    $0.00

Real Property – Lots 3, 4 & S1/2 of W1/2 of    $2,755,200.00
      Section 2, Lots 1, 2 & S1/2
      of NE1/4 of Section 3, Lots

2, 3, 4 & SW1/4 of NE1/4 of
Section 4; Lots 1, 2 & S1/2
of NE1/4 of Section 5; E1/2 of SE1/4
of Section 10; SW1/4 and W1/2 of
Section 11; & NE1/4 of Section 15

| | | |
|---|---|---|
| Sandton Credit Solutions Master Fund III | ($10,692,876.25) (approx.) | |
| Swenson Partnership | (353,030.81) (approx.) | |
| Net subtotal for liquidation analysis | $0.00 | |
| 2. Checks not cashed & Checking | $278,296.92 | |
| Sandton Credit Solutions Master Fund III | ($10,692,876.25) (approx.) | |
| Net subtotal for liquidation analysis | $0.00 | |
| | | |
| 3. Crops | $641,627.29 | |
| Sandton Credit Solutions Master Fund III | ($10,692,876.25) (approx.) | |
| Est. Reduction to account for liquidation | | |
| | | |
| 4. Equipment / Machinery | $1,081,900.00 | |
| Sandton Credit Solutions Master Fund III | ($10,692,876.25) (approx.) | |
| Est. Reduction to account for liquidation | | |

LESS IRS priority claim w/ interest                                    ($      100.00)
LESS Liquidation expenses as follows: *
         estimated advertising expenses
         estimated commission on real estate and
                  personal property at 10%
         estimated reduction for collection costs on
                  accounts receivable at 30% average
         estimated capital gains tax at 30% on real estate
         estimated sales tax on commissions at 6.5%
         * Does not account for early withdrawal fees or penalties
LESS Chapter 7 Trustee's fees / compensation
LESS Chapter 7 Trustee's estimated attorney's fees
LESS sales tax on Chapter 7 Trustee's attorney's fees

There would be funds available to pay unsecured creditors if assets are not foreclosed upon by the first secured creditor. If a foreclosure sale, other creditors would need to redeem, or outbid prior creditors at Sheriff Sale, to include the large secured claim of Sandton to protect their interests.

The above analysis is based upon if the assets are liquidated. If Debtor's farming operation is closed, and the assets are sold through foreclosure, Debtor would estimate that the unsecured creditors would receive far less, after costs of sale, administrative expenses, and payments to secured and priority creditors than what they are receiving under the proposed chapter 11 plan. The Debtor believes that the plan affords substantially greater recovery to holders of claims than such holders would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

## X. DEBTORS' FINANCIAL HISTORY AND PROJECTIONS

Attached as Exhibit "A" are historical numbers, which represents Debtor's numbers submitted to the accountant for the tax returns.  Attached as Exhibit "B" are Debtor's projections for Plan purposes.  The projections are intended to be year to year, through the end of the Plan. Debtor's projections have been prepared by Debtor, who has consulted with his tax professionals and agricultural financial consultant, and received these historical numbers in the financials to prepare such projections.  The projections are largely based on historical ranges for Debtor's businesses that are continuing to operate post-filing.  The projections indicate that the Debtor should have sufficient cash flow to make the payments required under the Plan on the effective date to repay and service debt obligations and maintain operations on an ongoing basis. However, Debtor cautions that no representations can be made as to the accuracy of the financial projections or as to the Debtor's ability to achieve projected results.  Many of the assumptions upon which the projections are based are subject to uncertainties outside the control of the Debtor.  Some assumptions will not materialize, and events and circumstances incurring after the date on which the projections were prepared may be different from and may affect the Debtor's financial results.  However, Debtor provided its best effort in preparing these financials and attending to the accuracy of such.

The financial projections were not prepared with the view towards compliance with the guidelines established by the American Institute of Certified Public Accountants or the rules and regulations of the Securities and Exchange Commission regarding financial projection. Furthermore, the financial projections have not been audited by the Debtor's independent certified accountant.  Although presented with numerical specificity, the projections are based upon a variety on assumptions, some of which have not been achieved to date and may not be realized in the future, and are subject to business, litigation, economic, and competitive uncertainties and contingencies, many, if not all, of which are beyond the control of the Debtor. Consequently, the projections should not be regarded as a representational warranty by the Debtor, or any other person, that the financial projections will be realized.  Actual results may vary materially from those presented in the financial projections.

## XI.  FUTURE MANAGEMENT

Debtor will continue to operate the business.

## XII.  UNSECURED CREDITORS' COMMITTEE

The United States Trustee was unable to appoint a committee of unsecured creditors to serve in this case.

Respectfully submitted this 4th day of June, 2018.

HARDES HOLDING, LLC:

By:  _/s/ Wade Hardes_____ _____
    Its:  Managing Member

Prepared by:
GERRY & KULM ASK, PROF. LLC

By:  _/s/ Clair R. Gerry_____
    Clair R. Gerry
    Attorneys for Debtor
    507 West 10th Street
    P.O. Box 966
    Sioux Falls, SD 57101-0966
    Telephone: (605) 336-6400
    Facsimile: (605) 336-6842
    Email:  gerry@sgsllc.com